Hathaway, J.
(dissenting). The majority holds that an ex parte interview can be conducted under MCR 2.302(C) in a manner that is consistent with the Health Insurance Portability and Accountability Act (HIPAA),[1] provided that reasonable efforts have been made to secure a qualified protective order that meets the requirements of 45 CFR 164.512(e)(1)(v) as set forth in 45 CFR 164.512(e)(l)(ii)(B). I must respectfully dissent from this decision.
First, ex parte interviews are generally conducted orally. The introductory portion of 45 CFR 164.512 specifically limits oral disclosures of a covered entity’s information to instances “[w]hen the covered entity is required by this section to inform the individual of, or when the individual may agree to, a use or disclosure permitted by this section ....” (Emphasis added.) Because an ex parte interview is not required and cannot *451 be compelled by this section or under Michigan law, nor is there a requirement within 45 CFR 164.512(e) that a patient be informed of an ex parte interview in a judicial proceeding, and plaintiff has not agreed to the ex parte interview in this instance, the provisions of 45 CFR 164.512(e) relied on by the majority cannot be construed as authorizing an ex parte interview that involves the oral disclosure of health information.
Second, I also disagree with the majority’s conclusion that Michigan law authorizing ex parte interviews is valid and enforceable after the adoption of HIPAA. First, the physician-patient waiver provisions of both MCL 600.2157 and MCL 600.2912f are preempted by HIPAA, because they are contrary to and not more stringent than HIPAA. Second, the majority errs in its reliance on Domako v Rowe, 438 Mich 347; 475 NW2d 30 (1991), to support ex parte interviews. While Domako was a thoughtful and well reasoned opinion at the time, it relies on MCL 600.2157 and provisions of the Michigan Court Rules that embody that statute. That statute is now preempted by HIPAA. I conclude that ex parte interviews are not allowed in Michigan because HIPAA does not specifically authorize ex parte interviews, and the court rules and statutes relied on to authorize the interviews have been preempted.
Finally, even assuming that an ex parte interview was a permitted oral disclosure under 45 CFR 164.512(e), the majority opines that a party is only required to make reasonable efforts to obtain a qualified protective order rather than actually having to obtain a court order. In so holding, the majority fails to recognize that 45 CFR 164.512(e) applies to judicial and administrative proceedings, and that provisions of this subsection are only applicable if there is a corresponding judicial or administrative procedure available under *452 state law or court rule. This medical malpractice action is being pursued in a circuit court, rather than in an administrative proceeding, and as such is subject to our court rules. Under our court rules, there is no mechanism for a party to only make a reasonable effort to obtain a court order. Under the Michigan Court Rules, a party must make a request for an order by motion, and the request is either granted or denied. Under the majority’s analysis, only a reasonable effort to secure the order is required, which can only mean that the request could be incompletely made or denied altogether and an ex parte interview could still take place. The majority’s analysis and conclusion are completely at odds with our court rules and undermine the authority of trial courts to enforce the court rules and their own orders. Thus, the majority errs by relying on an inapplicable HIPAA provision to support its analysis, and I cannot agree with such an interpretation.
Accordingly, I would vacate the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.
I. HIPAA
HIPAA was enacted in 1996 to provide a minimum national standard for the protection of private health information. HIPAA was intended to be a shield to protect private medical information from disclosure to third parties. HIPAA is a complex and comprehensive regulatory scheme. This overview is only intended to provide the necessary background to address those HIPAA regulations that deal with judicial proceedings and ex parte communications.
HIPAA provides an all-encompassing umbrella that protects the confidentiality of patient health information. HIPAA regulations specify that a covered entity *453 may not use or disclose protected health information, except as permitted or required under the act. 45 CFR 164.502(a). Under its broad definitions, a covered entity includes a health plan, a health care clearinghouse, or a health care provider who transmits any health information in electronic form in connection with a covered transaction. 45 CFR 160.103. Health Information includes both oral information as well as information that is recorded in any form or medium that is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse. Id. Individually identifiable health information includes any information that relates to the past, present, or future physical or mental health or condition of an individual, or the past, present, or future provision of or payment for the provision of health care to an individual; and either identifies the individual, or provides a reasonable basis to believe the information can be used to identify the individual. Id. In sum, HIPAA’s umbrella covers any health information, oral or recorded, that is individually identifiable and transmitted or maintained by a covered entity in any form or medium unless a specific requirement or exception is found in the act that provides for release of the protected information.
Finally, any HIPAA standard or requirement that is contrary to state law preempts state law, unless the state law is more stringent than HIPAA. 45 CFR 160.203. Contrary means either that a covered entity would find it impossible to comply with both the state and federal requirements or that the provision of state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of HIPAA. 45 CFR 160.202. More stringent means that the state law provides greater privacy protection than HIPAA. 45 CFR 160.202.
*454 II. HIPAA AND JUDICIAL PROCEEDINGS
HIPAA contains narrowly tailored exceptions for disclosures of protected health information during judicial or administrative proceedings. See 45 CFR 164.512(e). While HIPAA carves out certain areas of the law, such as worker’s compensation, for individualized treatment,[2] HIPAA does not contain a separate section applicable only to medical malpractice claims. Nor does HIPAA impose more or less protection of health information for persons bringing medical malpractice claims, and thus medical malpractice claims are bound by the terms and conditions of 45 CFR 164.512(e) governing judicial proceedings. In judicial proceedings, absent a validly executed HIPAA compliant authorization as mandated by 45 CFR 164.508, a covered entity may only disclose health information according to the specific terms and conditions set forth in 45 CFR 164.512(e).
HIPAA does not address or mention ex parte interviews. The majority opines that because ex parte interviews are not mentioned in HIPAA, they are not contrary to HIPAA, and are thus authorized. I believe this analysis and conclusion are in error. HIPAA only allows for the release of information pursuant to a specifically enumerated requirement or exception. 45 CFR 164.502(a). If no requirement or exception exists, disclosure is not allowed. Id.
*455 The majority also suggests that HIPAA draws no distinction between when a covered entity’s information needs to be disclosed in documentary form and when the disclosure can be made orally. To the contrary, 45 CFR 164.512 does make this distinction. While the majority relies on 45 CFR 164.512 to authorize oral ex parte interviews, they fail to address its introductory portion, which specifically limits when a covered entity may disclose protected health information orally:
A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section, subject to the applicable requirements of this section. When the covered entity is required by this section to inform the individual of or when the individual may agree to, a use or disclosure permitted by this section, the covered entity’s information and the individual’s agreement may be given orally. [45 CFR 164.512 (emphasis added).]
As this plain language indicates, oral disclosures are allowed, but are limited to “[w]hen the covered entity is required by this section to inform the individual of, or when the individual may agree to, a use or disclosure permitted by this section, the covered entity’s information and the individual’s agreement may be given orally.” Id. (emphasis added). This introductory language contains limited circumstances wherein oral disclosures of information are permitted. If the circumstance is not provided for by that language, oral disclosure of information is not allowed. I respectfully suggest that the majority errs in its analysis, because neither of the specific circumstances applicable to use or disclosure of the covered entity’s information is present in this instance. Ex parte interviews can not be required by this section or Michigan law, nor is there a *456 requirement within 45 CFR 164.512(e) that a patient be informed of an ex parte interview in a judicial proceeding. Additionally, the ex parte interview was not agreed to in this instance. Accordingly, the two subsections of 45 CFR 164.512(e) relied on by the majority cannot be construed as authorizing ex parte interviews, because the very terms of the introductory language of that section does not allow for oral disclosures.[3]
However, even if the introductory language limiting oral disclosures didn’t exist, the majority’s reliance on 45 CFR 164.512(e)(l)(ii)(B)[4] would be troubling. Subsection 164.512(e)(l)(ii)(B) permits disclosure “[i]n response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if”:
The covered entity receives satisfactory assurance, as described in paragraph (e)(l)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(l)(v) of this section. [Emphasis added.]
This subsection, by its very terms, contemplates the use of state law procedures that occur without the need for a court order. Consistent with the mandates of this subsection the majority opines that a party is only required to make reasonable efforts to obtain a qualified protective order that meets the requirements of 45 CFR 164.512(e)(l)(v) rather than actually having to obtain a court order. In so holding, the majority fails to recognize *457 that subsection 164.512(e) applies to judicial and administrative proceedings, and that its provisions are only applicable if there is a corresponding judicial or administrative procedure available under state law or court rule. This medical malpractice action is being pursued in a circuit court rather than in an administrative proceeding, and as such is subject to our Michigan Court Rules. Under our court rules, there is no mechanism for a party to only make a reasonable effort to obtain a court order. MCR 2.119(A)(1) requires a request for an order to be made by motion, and the motion is either granted or denied. Query, what does the majority contemplate when it proposes that only a reasonable effort need be made to obtain an order in a circuit court? The majority’s “reasonable efforts” analysis can only mean that a request could be incompletely made, or denied by the trial court altogether, and an interview could still take place. Either of these results would be absurd. This analysis and conclusion are completely at odds with our court rules and completely undermine the authority of trial courts to enforce the court rules, or even their own orders.
I think it is clear that the majority errs by relying on an inapplicable HIPAA provision to support its analysis, and I cannot agree with such an interpretation. When interpreting § 164.512, it must be understood that this subsection of provision of HIPAA regulation applies not only to courts, but also to every federal agency, including those that administer Medicare, Medicaid, veterans’ benefits, and Social Security, to name a few. Most of these federal agencies do not have ready access to circuit court judges who can issue or deny orders. Using a provision that is obviously designed for an administrative proceeding in a judicial proceeding leads to an absurd result. “[Sjtatutes must be construed to prevent absurd results. . . .” Rafferty v Markovitz, 461 Mich 265, 270; 602 NW2d 367 (1999).
*458 The majority’s reliance on § 164.512(e)(l)(v) is equally troubling. Again, even if the prefatoiy section limiting oral disclosures did not exist, the majority’s conclusion that § 164.512(e)(l)(v) may be used because it permits disclosure pursuant to a qualified protective order issued by a court or administrative tribunal or a stipulation by the parties is similarly erroneous. This provision “[rjequires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.” 45 CFR 164.512(e)(l)(v)(B) (emphasis added). A verbal ex parte interview cannot be returned or destroyed at the conclusion of the litigation. The fact that an interview could be recorded or memorialized, thus creating something that could be returned or destroyed, does not resolve the analytical problem as the majority suggests. HIPAA’s return-or-destroy provision is mandatory and not permissive, and we are not free to rewrite HIPAA’s mandates; we are required to follow them.
Further, to support its analysis, the majority borrows the phrase oral information from the broad definition of what is covered by HIPAA and uses it to expand this narrowly tailored exception to justify its interpretation. I must respectfully disagree with this premise and the methodology used to come to the conclusion.. What is protected by HIPAA is not the same as what is excepted. What is protected by HIPAA is vast; the exceptions are specific and narrowly tailored. Disclosure is only allowed if permitted or required under the act, 45 CFR 164.502(a), and, again, we are not free to rewrite HIPAA’s mandates; we are required to follow them.
III. MICHIGAN STATUTES
It is also necessary to review Michigan law to determine whether ex parte interviews are allowable under *459 any statute or court rule in a manner that is consistent with HIPAA’s provisions which allow for oral disclosures.[5] This inquiry begins with a review of applicable Michigan medical malpractice statutes to determine if the statutes are enforceable or if they are preempted by HIPAA. State law is preempted by HIPAA if the state law is contrary to HIPAA, meaning that a covered entity would find it impossible to simultaneously comply with the federal and state law and the state law is not more stringent than HIPAA. 45 CFR 160.202.
Two statutory provisions, MCL 600.2157 and MCL 600.2912f, provide for the waiver of privilege in the context of medical malpractice actions. The relevant language of MCL 600.2157 is contained in its second sentence, which provides:
If the patient brings an action against any defendant to recover for any personal injuries, or for any malpractice, and the patient produces a physician as a witness in the patient’s own behalf who has treated the patient for the injury or for any disease or condition for which the malpractice is alleged, the patient shall be considered to have waived the privilege provided in this section as to another physician who has treated the patient for the injuries, disease, or condition. [Emphasis added.]
The unambiguous language of this provision clearly indicates that the physician-patient privilege is waived by virtue of two triggering events: (1) filing a lawsuit for personal injury or malpractice, and (2) producing a physician as a witness in the patient’s own behalf. Once those two triggering events occur, nothing more is required by the statute and the privilege is waived. The statute does not require compliance with HIPAA to release or compel production of the health information. *460 Rather, by virtue of the two triggering events alone, waiver occurs and the information may be released or compelled.
Under HIPAA, all health care information is protected by its umbrella unless it is specifically exempted. Release of information in judicial proceedings under HIPAA is controlled by 45 CFR 164.512(e). However, the exceptions contained within this section are specific and narrowly tailored. Significantly, none of the specific and narrowly tailored exceptions within § 164.512(e) allows for release of information by virtue of the mere occurrence of the two triggering events named in MCL 600.2157, filing and production of a witness. Thus, the second sentence of MCL 600.2157 is contrary to HIPAA because contrary means that a covered entity would find it impossible to comply with both the Michigan and HIPAA requirements, or that the provision of Michigan law stands as an obstacle to the accomplishment and full purposes and objectives of HIPAA. A covered entity cannot simultaneously comply with the second sentence of § 2157 and HIPAA.
Moreover, the second sentence of § 2157 is clearly not more stringent in its requirements than HIPAA because more stringent means that the state law provides greater privacy protection for the individual who is the subject of the individually identifiable health information. 45 CFR 160.202. The second sentence of § 2157 simply does not provide a patient with greater privacy protection; to the contrary, it provides less. Accordingly, by the very terms and conditions set forth in HIPAA, the second sentence of § 2157, which provides for waiver, is preempted.
MCL 600.2912f must also be reviewed to determine whether any of its provisions are also preempted by HIPAA. I conclude that § 2912f is preempted in its *461 entirety because it too is contrary to and not more stringent than HIPAA. MCL 600.2912f provides in pertinent part:
(1) A person who has given notice under [MCL 600.2912b] or who has commenced an action alleging medical malpractice waives for purposes of that claim or action the privilege created by [MCL 600.2157] and any other similar privilege created by law with respect to a person or entity who was involved in the acts, transactions, events, or occurrences that are the basis for the claim or action or who provided care or treatment to the claimant or plaintiff in the claim or action for that condition or a condition related to the claim or action either before or after those acts, transactions, events, or occurrences, whether or not the person is a party to the claim or action.
(2) Pursuant to subsection (1), a person or entity who has received notice under [MCL 600.2912b] or who has been named as a defendant in an action alleging medical malpractice or that person’s or entity’s attorney or authorized representative may communicate with a person specified in [MCL 600.5838a] in order to obtain all information relevant to the subject matter of the claim or action and to prepare the person’s or entity’s defense to the claim or action. [Emphasis added.]
This statute provides that the physician-patient privilege is waived once a notice of intent (NOI) is provided pursuant to MCL 600.2912b. Section 2912f, once again, does not require that release of protected health care information be contingent upon compliance with HIPAA by such means as providing the covered entity with a HIPAA compliant authorization or a court order compelling production. Waiver is triggered in this instance by the mere act of sending or receiving an NOI. Nothing more is required. Subsection 164.512(e), which covers disclosure during judicial and administrative proceedings, does not have an exception for disclosure by virtue of an NOI being *462 provided to a defendant in and of itself.[6] HIPAA provides narrowly tailored methods of release, none of which are similarly required by § 2912f. As HIPAA contains no exception by virtue of providing an NOI, this entire statute is contrary to HIPAA because a covered entity would find it impossible to comply with both the Michigan and HIPAA requirements, and this statute would stand as an obstacle to the accomplishment and full purposes and objectives of HIPAA. A covered entity cannot comply with the second sentence of § 2912f and HIPAA, and § 2912f is clearly not more stringent in its requirements than HIPAA. Section 2912f does not provide greater privacy protection for the individual who is the subject of the individually identifiable health information; to the contrary, it provides less.
This interpretation of § 2157 and § 2912f recognizes that HIPAA protects all health care information in any form and that if and only if there is a specifically enumerated exception in HIPAA are its provisions waived. HIPAA contains no provision that permits waiver of privilege by the mere act of filing a medical malpractice action or sending an NOI, and we are not free to write such an exception into the federal act. If HIPAA did contain such an exception, all one would need to do is give a copy of the complaint or an NOI to a covered entity and ask that it release the requested information. Obviously, no one contemplates this as the procedure; however, that is precisely all these two statutes require. Accordingly, I conclude that the second sentence of § 2157 and all of § 2912f are preempted by HIPAA and are not enforceable.
TV. DOMAKO AND THE MICHIGAN COURT RULES
Finally, it is also necessary to review Domako and our *463 court rules to determine whether ex parte interviews can be conducted consistently with HIPAA’s provisions which allow for oral disclosures. In Domako, this Court reviewed both § 2157 and our court rules to determine whether ex parte interviews were permissible. Domako found equally compelling support for allowing ex parte interviews in both sources. The Court opined:
The statute provides protection for information relayed by the patient to the physician, and it also provides for a waiver of the privilege when the plaintiff “produce [s] any physician as a witness in his own behalf” in a malpractice action. Similarly, the Michigan Court Rules offer protection for medical information-.
“When a mental or physical condition of a party is in controversy, medical information about the condition is subject to discovery under MCR 2.310 to the extent that... the party does not assert that the information is subject to a valid privilege.” [MCR 2.314(A)(1)(b).]
Just as in the privilege statute, the court rules provide for the waiver of the physician-patient privilege. MCR 2.314(B)(1) clarifies the procedure by which the patient waives the privilege: “The privilege must be asserted in the party’s written response under MCR 2.310. A privilege not timely asserted is waived in that action....” The Staff Comment declares that this section requires a party to decide at the discovery stage whether to assert the privilege. Unlike other forms of litigation, a case involving medical malpractice cannot proceed without evidence of the physical or mental condition of the plaintiff. Therefore, requiring the plaintiff to decide whether to assert the privilege at the discovery stage, rather than at trial, promotes efficient use of judicial resources by fostering an early resolution of this issue.[7] [Emphasis added.]
As previously indicated, § 2157 has been preempted by HIPAA, and that portion of the Domako analysis is no longer valid. Accordingly, the only remaining question is *464 whether Domako’s court rule analysis has continuing validity, and I conclude that it does not, despite the fact that Domako was a thoughtful and well reasoned opinion.
Domako reasoned that ex parte interviews were permissible under our court rules because “(j]ust as in the privilege statute, the court rules provide for the waiver of the physician-patient privilege ... [a]privilege not timely asserted is waived in that action....” Domako, 438 Mich at 354 (emphasis added). This analysis is fundamentally premised on the concept that inaction waives the privilege. However, privileges cannot be waived by virtue of inaction under HIPAA; rather, there must be a requirement or an exception for disclosure of protected health information. As ex parte interviews are not required and cannot be compelled, and no exception allows for them, they cannot be used in Michigan, and the Domako analysis cannot be sustained under the current mandates of HIPAA.
Further, the majority’s reliance on and analysis of MCR 2.302(C) is flawed. While Domako suggested that MCR 2.302(C) could be used to impose restrictions on ex parte interviews after the waiver of privilege, the majority here suggests that MCR 2.302(C) could be used to authorize the interviews. I respectfully disagree with the majority’s conclusion that the rule authorizes ex parte interviews. MCR 2.302(C) contains no language authorizing ex parte interviews, and the majority fails to explain how this rule could be so interpreted given the content of the rule.[8]
*465 Finally, my analysis should not be read to suggest or imply that a plaintiff may frustrate legitimate discovery, or engage in the gamesmanship that Domako wisely sought to curtail. However, these concerns are effectively addressed in MCR 2.314(B)(2), which provides:
Unless the court orders otherwise, if a party asserts that the medical information is subject to a privilege and the assertion has the effect of preventing discovery of medical information otherwise discoverable under MCR 2.302(B), the party may not thereafter present or introduce any physical, documentary, or testimonial evidence relating to the party’s medical history or mental of physical condition.
While requiring a defendant to conduct discovery by means of a deposition, rather than by an ex parte interview, could not be considered “preventing discov *466 ery of medical information,” if a plaintiff does assert the privilege during a deposition and thus prevents discovery of medical information, he or she will be precluded from offering testimony at trial relating to his or her medical history or mental or physical condition.
V CONCLUSION
I respectfully dissent from the holding of the majority that an ex parte interview can be conducted under MCR 2.302(C) in a manner that is consistent with HIPAA, provided that reasonable efforts have been made to secure a qualified protective order that meets the requirements of 45 CFR 164.512(e)(l)(v) as set forth in 45 CFR 164.512(e)(l)(ii)(B). Ex parte interviews involve oral disclosures of a covered entity’s information. The introductory portion of 45 CFR 164.512 specifically limits oral disclosures of a covered entity’s information to instances “[wjhen the covered entity is required by this section to inform the individual of, or when the individual may agree to, a use or disclosure permitted by this section. . .” (Emphasis added.) Because an ex parte interview is not required by either this section or Michigan law, nor is there a requirement within 45 CFR 164.512(e) that a patient be informed of an ex parte interview in a judicial proceeding, and plaintiff has not agreed to an ex parte interview in this instance, the subsections of 45 CFR 164.512(e) relied on by the majority cannot be construed as authorizing an ex parte interview that involves the oral disclosure of health information.
I also disagree with the majority’s conclusion that Michigan law authorizing ex parte interviews is valid and enforceable after the adoption of HIPAA. First, the physician-patient waiver provisions of MCL 600.2157 and MCL 600.2912f are preempted by HIPAA, because *467 they are contrary to, and not more stringent than, HIPAA. Second, the majority errs in its reliance on Domako to support ex parte interviews, because Domako was based on Michigan law that has since been preempted by HIPAA. I conclude that ex parte interviews are not allowed in Michigan because HIPAA does not specifically authorize ex parte interviews, and Michigan law authorizing such interviews has been preempted.
Finally, by holding that a party is only required to make reasonable efforts to obtain a qualified protective order rather than actually having to obtain a court order, the majority fails to recognize that the Michigan Court Rules contain no mechanism for a party to only make a reasonable effort to obtain a court order. Requiring only a reasonable effort to secure the order can only mean that the request could be incompletely made, or denied altogether, and an ex parte interview could still take place. The majority’s analysis and conclusion are completely at odds with our court rules and undermine the authority of trial courts to enforce the court rules and their own orders, and I cannot agree with such an interpretation.
Accordingly, I would vacate the decision of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

 42 USC 1320d et seq. References to “HIPAA” may include the regulations promulgated under that statute.

 Compare and contrast HIPAA’s treatment of workers’ compensation claims, which provides for a more expansive method of disclosure than is allowed in the general category for judicial proceedings. No comparable section exists for medical malpractice claims. Section 164.512(1) provides:
Standard: Disclosures for workers’ compensation. A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers’ compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault.

 Compare and contrast an ex parte interview with a deposition, which can he conducted consistently with 45 CFR 164.512(e) because depositions are a recognized procedure under our court rules which are not only required but can be compelled. Moreover, depositions meet all of the notice provisions of the subsection.

 This subsection requires that reasonable efforts be made to secure a protective order that meets the requirements of 45 CFR 164.512(e)(l)(v).

 This opinion addresses oral disclosures only, and does not opine on disclosure of health information in written documentary form.

 The medical malpractice NOI waiting period is found in MCL 600.2912b.

 Domako, 438 Mich at 353-354.

 MCR 2.302(C) provides in pertinent part:
Protective Orders. On motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following orders:
*465 (1) that the discovery not he had;
(2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place;
(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
(4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;
(5) that discovery be conducted with no one present except persons designated by the court;
(6) that a deposition, after being sealed, be opened only by order of the court;
(7) that a deposition shall be taken only for the purpose of discovery and shall not be admissible in evidence except for the purpose of impeachment;
(8) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;
(9) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.